IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE PROBST GROUP, LLC,

                      Plaintiff,

  v.

COLONY INSURANCE COMPANY,

                      Defendant.

OPINION and ORDER

23-cv-765-jdp

---

      Plaintiff The Probst Group, LLC was a general contractor for two agricultural companies that purchased covers for their digesters, which are large, airtight tanks that break down manure and food waste. Probst delegated responsibility for the design and installation of the covers to subcontractors, including Layfield USA Corporation and Seaman Corporation. Shortly after the covers were installed, holes, rips, tears, and leaks developed in the covers' membrane material. When repairs were unsuccessful, Probst agreed to replace the covers.

      In this lawsuit, Probst seeks reimbursement from Colony Insurance Company, who issued Probst a commercial general liability policy. Probst asserts claims for breach of contract and declaratory relief. Probst's sole member is a citizen of Wisconsin, Colony is a citizen of Virginia and Illinois, and Probst's requested relief includes more than $300,000 for the cost of replacing a damaged cover. So the court may exercise jurisdiction under 28 U.S.C. § 1332.

      Both parties move for summary judgment. Dkt. 17 and Dkt. 27. The parties dispute both whether the policy grants coverage to the losses at issue and also whether any exclusions apply. But the court need not consider the exclusions unless there is a grant of coverage. Probst contends that its damages are covered by two policy provisions, but Probst has not submitted admissible evidence to support its claim under the first provision policy provision, and the

second policy provision does not create coverage. So the court will grant Colony's motion for summary judgment and deny Probst's summary judgment motion.

Probst also moves to strike portions of declarations that Colony filed after briefing was concluded. Dkt. 49. The court did not rely on those declarations in resolving the summary judgment motion, so the motion is denied as moot.

ANALYSIS

Probst has the burden to show that its claimed losses fall within one of the policy's coverage provisions. *See Kozlik v. Gulf Insurance Co.*, 2003 WI App 251, ¶ 8, 268 Wis. 2d 491, 673 N.W.2d 343. Probst contends that it has coverage under two provisions in the policy, one that relates to "property damage" caused by an "occurrence" and one that relates to "products-completed operations hazards."[1]

As explained below, Probst's reliance on the first provision fails as a matter of fact: Probst cites no admissible evidence of an "occurrence," so no reasonable jury could find in Probst's favor on that issue. Probst's reliance on the second provision fails as a matter of policy interpretation: the provision on products-completed operations hazards does not create coverage. So Colony is entitled to summary judgment under both provisions.

A.  **Property damage caused by an occurrence**

The policy includes the following coverage provision:

---

[1] Probst also contends that "waiver and equitable estoppel bar Colony from denying coverage." Dkt. 18, at 11. But "[w]aiver and estoppel cannot be used to supply coverage from the insurer to protect the insured against risks not included in the policy or expressly excluded therefrom, for that would force the insurer to pay a loss for which it has not charged a premium." *Maxwell v. Hartford Union High School Dist.*, 2012 WI 58, ¶¶ 34–35, 341 Wis. 2d 238, 814 N.W.2d 484. So the court will grant summary judgment to Colony on that issue.

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" that takes place during the "policy period" and is caused by an "occurrence" in the "coverage territory."

Dkt. 21-1, at 27. The parties dispute two issues about this provision: (1) whether Probst's losses were caused by an "occurrence"; and (2) whether Probst's losses qualify as "property damage." The first issue is dispositive, so it is not necessary to consider the second.

The policy defines an occurrence as "an accident, including conditions or repeated exposure to substantially the same general harmful conditions." The policy does not define the word "accident," but Wisconsin courts have defined it to mean "an event or condition occurring by chance or arising from unknown or remote causes," or "an event which takes place without one's foresight or expectation." *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶ 34, 408 Wis. 2d 39, 992 N.W.2d 31. The parties dispute whether Probst's losses were caused by an accident.

For the purpose of this issue, Colony does not take a position on what caused the damage to the digester covers. But it says that Probst's own theory in its complaint is that the damage was caused by the faulty workmanship of its subcontractors. Specifically, Probst alleged in its complaint that "[t]he tears, rips, holes, and leaks in the covers occurred along folds in the geomembrane material," and "[t]he folds are the result of Layfield and/or Seaman improperly manufacturing, shipping, and handling the geomembrane material." Dkt. 15, ¶¶ 20–21.

As Colony points out, Wisconsin courts have stated repeatedly that faulty workmanship is not an accident for the purpose of establishing an "occurrence" under an insurance policy. *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶ 35, 408 Wis. 2d 39, 992 N.W.2d 31; *Riverback Farms, LLC v. Saukville Feed Supplies, Inc.*, 2023 WI App 40, 409 Wis. 2d 14, ¶ 13, 995 N.W.2d 257; *Acuity v. Society Ins.*, 2012 WI App 13, ¶¶ 24, 339 Wis. 2d 217, 810 N.W.2d

3

812. The cases cited by the parties do not explain why, but presumably it is because the work itself is an intentional act, not something that results from "unknown or remote causes."

This does not mean that cases involving negligent workmanship cannot also involve an occurrence. Wisconsin courts have clarified that "faulty workmanship is not an occurrence, but faulty workmanship can lead to an occurrence that causes property damage." *5 Walworth*, 2023 WI 51, at ¶ 35. In other words, property damage is not excluded from coverage simply because the original cause was poor workmanship. Rather, so long as the workmanship caused some intervening event that qualifies as an accident, and that event caused the property damage, the occurrence requirement is satisfied. *See McLaughlin v. Gaslight Pointe Condominium Association, LTD*, 2024 WI App 30, ¶ 29, 412 Wis. 2d 140, 8 N.W.3d 115.

In several cases, Wisconsin courts have concluded that there may be an "occurrence," even though poor workmanship was the original cause of the damage:

- The owner of a residential facility hired a contractor to install windows, which later leaked, and the owner sued the contractor, alleging negligence. The court concluded that the "occurrence" was that the windows leaked, and that occurrence caused water damage. *Kalchthaler v. Keller Const. Co.*, 224 Wis. 2d 387, 591 N.W.2d 169, 173, (Ct. App. 1999).[2]

- A doll manufacturer hired a contractor to build a new warehouse. Shortly after completion, the warehouse began sinking into the ground. The court concluded that the "occurrence" was "substantial soil settlement underneath the completed building, which occurred because of the faulty site-preparation advice of the soil engineering subcontractor" and that the soil settlement damaged the warehouse. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 5, 268 Wis. 2d 16, 673 N.W.2d 65.

---

[2] One nonprecedential decision concluded that *Kalchthaler* is no longer good law. *See Yeager v. Polyurethane Foam Insulation, LLC*, No. 2010AP2733, 2011 WL 6033041, at *4 (Wis. Ct App. Dec. 6, 2011). But both the Wisconsin Supreme Court and the Wisconsin Court of Appeals continue to cite *Kalchthaler* with approval in precedential decisions. *See, e.g., 5 Walworth*, 2023 WI 51, at ¶ 35; *Riverback Farms*, 2023 WI App 40, at ¶¶ 15–16.

- Dairy farm tenants hired a contractor to make improvements to the farm and later alleged various deficiencies in the contractor's work and various items of damages, including damage by a manure scraper to improperly installed rubber mats. The court concluded that a reasonable jury could find that the damage was caused by an occurrence. The court did not specifically identify what the occurrence was, but it stated that "[t]he damage was caused by an accident in that the damage was not intended or anticipated and it also was not intended or anticipated that using the scraper to clean the manure off the mats would damage the mats." *Glendenning's Limestone & Ready-Mix Co., Inc. v. Reimer*, 2006 WI App 161, ¶¶ 42–43, 295 Wis. 2d 556, 721 N.W.2d 704.

- A company hired contractors to remove a concrete wall and install a new one. The building was damaged during excavation. The court concluded that the "occurrence" was "the accidental soil erosion that occurred because of faulty excavation techniques," and the soil erosion caused the damage to the building. *Acuity v. Society Ins.*, 2012 WI App 13, ¶ 17, 339 Wis. 2d 217, 810 N.W.2d 812.

- A dairy farm's supplier started using a different feed that the farmer did not authorize. The farm alleged that the change in feed caused health problems for its cows. The court concluded that a reasonable jury could find that the "occurrence" was the magnesium deficiency in the cows caused by the substitution and that the property damage was "physical harm to the cattle" caused by the magnesium deficiency. *Riverback Farms*, 2023 WI App 40, at ¶ 12.

- Owners of condominium units sued their association for failing to make needed repairs, leading to water damage. The court concluded that a reasonable jury could find that the "occurrence" was "continued water intrusion" caused by the association's "decisions regarding maintenance and repair," and the leaks caused property damage. *McLaughlin*, 2024 WI App 30, at ¶ 30.

- A landlord sued a commercial tenant after an explosion on the property, alleging that the tenant negligently stored lithium, which led to the explosion. The court concluded that the alleged occurrence was "that the leased premises flooded and water came into contact with lithium, causing an explosion." *LCB, LLC v. Spectrum Brands, Inc.*, No. 2022AP978, 2024 WI App 1, ¶ 26, 2023 WL 8269287, at *5 (Ct. App. Nov. 30, 2023).

The Wisconsin Supreme Court's most recent consideration of the issue was in *Walworth*, in which the plaintiff alleged that a contractor negligently constructed an in-ground pool. The walls of the pool cracked, causing water to leak into the surrounding soil, and

5

requiring the plaintiff to demolish the pool and construct a new one. 2023 WI 51, ¶¶ 1, 8–9. The court concluded that a reasonable jury could find an "occurrence," reasoning as follows:

> The improper installation of the shotcrete and the incorrect placement of the steel reinforcing bars are not enough on their own to constitute an occurrence; if proven, that is faulty workmanship. But the record can support a conclusion that this faulty work caused the pool to crack and leak, and those cracks became worse as the pool leaked and destabilized the surrounding soil. The cracks, leakage, and soil damage could constitute accidents—unexpected and unforeseen events—caused by improper installation. And these cracks and the damage to the surrounding soil also could constitute physical injuries to the homeowner's tangible property—i.e., property damage as defined by the policy.

*Id.* at ¶ 35.

These cases show that faulty workmanship often leads to another event that qualifies as an occurrence. In fact, Colony cites no cases in which a Wisconsin court ruled in favor of an insurer on a question about whether faulty workmanship caused an "occurrence" within the meaning of an insurance policy. But the Wisconsin courts have not held that faulty workmanship *necessarily* causes an occurrence. Rather, they insist that "every failure to adequately perform a job, even if that failure may be characterized as negligence, is not an 'accident,' and thus not an 'occurrence'" under general liability policies. *Glendenning's*, 2006 WI App 161, at ¶ 39. So Probst must still identify an occurrence caused by the alleged negligence of the subcontractors.

In its complaint and opening brief, Probst does not clearly articulate what the asserted occurrence was in this case. The complaint alleges that "[t]he physical damage to the covers is caused entirely by the conduct or work performed by Probst's subcontractors," without specifying an occurrence. Dkt. 15, ¶ 19. Probst's opening brief describes the occurrence in different ways. The relevant heading of its brief is that "Property Damage to the Covers Caused

6

by Defective Workmanship Is an 'Accident' Constituting an Occurrence." Dkt. 18, at 9. This suggests that the property damage itself was an occurrence ("Property Damage . . . Is an . . . Occurrence"), but damage cannot cause itself. The opening brief later states that "[t]he holes, rips, tears, and leaks in the covers were caused by defective materials and/or defective shipping, handling, or installation of the geomembrane materials." *Id.* at 18. This suggests that the occurrence was the faulty workmanship of Probst's subcontractors. By failing in their opening brief to clearly identify an event that caused the property damage (other than the faulty workmanship itself), plaintiffs forfeited their right to obtain summary judgment on this claim.

The remaining question is whether to grant summary judgment to Colony.

In Probst's combined opposition and reply brief, Probst clarifies its theory, stating that "degradation in the covers' membrane materials" is the occurrence, and that degradation led to property damage in the form of holes, rips, tears, and leaks. Dkt. 34, at 3. The distinction that Probst is making between the "occurrence" and the "property damage" is subtle. Degradation in the membrane is essentially a lesser form of damage preceding a hole, rip, tear, or leak in the membrane. In the Wisconsin cases cited above, the occurrence led to a different sort of damage, such as a leak leading to water damage or erosion causing a building to sink. Probst does not identify that sort of occurrence in this case.

But even if the court assumes that degradation of the membrane could be an occurrence, Probst has a different problem, which is that Probst cites no admissible evidence to show what caused the damage to the digester cover. The relevant section of Probst's brief includes no citations to the record to support the "degradation" theory. Probst submitted only two proposed findings of fact about causation, one denying that Probst was to blame for problems

7

with the covers, and one alleging that the "work and materials supplied by subcontractors were substantial factors in bringing about the holes, rips, tears, and leaks in the covers." Dkt. 33, ¶¶ 19–20. Neither those proposed facts nor the two pieces of evidence cited in them address the degradation theory.

The first piece of evidence cited by Probst is a declaration from Probst's owner, who says that "[t]esting we had completed on the covers revealed defects in the materials and workmanship supplied by Layfield and Seaman." Dkt. 21, ¶ 15. The second piece of evidence appears to be the test results, a document called "Spectroscopic, Mechanical, and Thermal Characterization of PVC EVA Sheet May 2020." Dkt. 21-6. Probst did not submit a report or testimony of anyone involved in conducting the tests, and it does not explain why the company's owner is qualified to interpret the results. In any event, Probst points to nothing in the test results supporting its degradation theory or even showing that Layfield or Seaman were negligent.

The bottom line is that Probst has submitted no admissible evidence showing that the damage to digestive covers was caused by an "occurrence" within the meaning of the policy. Wisconsin courts have liberally construed that term in the context of cases involving faulty workmanship, but it remains Probst's burden to adduce *some* evidence that an occurrence caused its damages so that a reasonable jury could rule in its favor on that issue. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Kozlik*, 2003 WI App 251, at ¶ 8. Probst failed to do that, so Colony is entitled to summary judgment on this claim.

## B. Products-completed operations hazard

Probst also contends that its losses are covered as a products-completed operations hazard. It relies on the following policy provision in its opening brief:

> 44. Products-completed operations hazard:
>
> a. Includes all bodily injury, property damage and environmental damage occurring away from premises you own or rent and arising out of your product or your work, except:
>
>> (1) Products that are still in your physical possession; or
>>
>> (2) Your work that has not yet been completed or abandoned. Your work will be deemed completed at the earliest of the following times:
>>
>>> (a) when all of your work called for in your contract has been completed;
>>>
>>> (b) when all of the work to be done at the job site has been completed if your contract calls for your work at more than one job site; or
>>>
>>> (c) when that part of your work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or placement, but which is otherwise complete, will be treated as completed.

Dkt. 21-1, at 69. Probst says this provision applies because the holes, rips, tears, and leaks in the covers are property damage, Probst did not possess the covers or the land on which they were installed, and the damage occurred after installation.

The problem with Probst's argument is that the provision it relies on is simply a definition that is part of a long list of definitions in the policy; Probst points to no language creating coverage. After Colony made this observation in its opposition brief, Probst said that coverage can be inferred from two other provisions. The first is included under a section called "Limits of liability and deductible:"

> The Products-Completed Operations Aggregate Limit set forth in Item 3 of the Declarations is the most we will pay for all: (i) damages under Coverages 1A and 1D because of bodily injury,

9

> property damage or environmental damage included in the products-completed operations hazard, and (ii) crisis management costs that result from a crisis management event arising directly from your product.

*Id.* at 48. The second is included in an endorsement for an "additional insured:"

> WHO IS AN INSURED, Coverage Part 1 and Part 2 is amended to include as an additional insured the person(s) or organization(s) shown in the SCHEDULE above, but only with respect to liability for bodily injury, property damage, environmental damage, or cleanup costs caused, in whole or in part, by your work at the location designated and described in the SCHEDULE of this endorsement performed for that additional insured and included in the products-completed operations hazard.

*Id.* at 75.

No reasonable insured would interpret either of these provisions as creating coverage for a products-completed operations hazard. Both provisions make it clear that they are about a products-completed operations hazard that is *otherwise* covered. The first provision is about "damages under Coverages 1A and 1D" and the second provision is about "Coverage Part 1 and Part 2." Probst points to no language in any part of Coverage 1 or Coverage 2 that creates coverage for a products-completed operations hazard.

Probst points out in its reply brief that Colony did not move for summary judgment regarding coverage for a products-completed operation hazard, so the court should allow the claim to proceed to trial if the court does not grant summary judgment in Probst's favor. But the court may grant summary judgment on its own motion when the parties had a fair opportunity to be heard on the issue. *Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 529 (7th Cir. 2011). In this case, Probst had the opportunity to support this claim in both of its briefs, but it failed to identify any provision in the policy that creates coverage for a products-completed operation hazard. This is a matter of contract interpretation, not a situation in which the losing

10

party could come forward with more facts to support the claim. So it is fair to resolve the issue now. The court will grant summary judgment to Colony.

ORDER

IT IS ORDERED that:

1. The Probst Group, LLC's motion for summary judgment, Dkt. 17, is DENIED.

2. Colony Insurance Company's motion for summary judgment, Dkt. 27, is GRANTED.

3. Probst's motion to strike, Dkt. 49, is DENIED as moot.

4. The clerk of court is directed to enter judgment in Colony's favor and close this case.

Entered November 5, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge